UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- X

VERONICA SIMPLICE,                                      :
                                                        :
                                      Plaintiff,        :
                                                        :
              - against -                               :
                                                        :
SODEXOMAGIC, LLC, SODEXO, INC.,                         :
and SDH SERVICES WEST, LLC,                             :
                                                        :
                                      Defendant.        :
--------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

24-cv-7818 (BMC)

**COGAN**, District Judge.

The issue in this employment discrimination case, presently before the Court on defendant's motion for summary judgment, is whether a reasonable jury could find that plaintiff's race was a substantial factor contributing to the adverse employment actions she suffered, or was the problem that she and her co-workers and managers, for other reasons, simply did not get along?  The paucity of racial overtones leads the Court to conclude that no reasonable jury could find that defendants discriminated or retaliated against her because of her race.

The essence of plaintiff's claims is that plaintiff, a middle-level manager, had two subordinates who, on two occasions, referred to plaintiff by nicknames: "Sister," "Blackie," and "Black Cake."  Plaintiff's objection to these references were placed before defendant's HR department, which, after investigation, could only substantiate that an employee had used the term "Sister" to describe her.  Nevertheless, the HR department instructed all employees that nicknames should not be used in the workplace, and a disciplinary memorandum was placed in the file of one of the employees about whom plaintiff had complained.  Plaintiff acknowledges that after HR issued this direction, there was no further use of nicknames.

Aside from that, plaintiff has plenty of evidence suggesting conflict, but none of it is racial. A subordinate yelled at her and her manager reassigned her to a schedule that did not fit her lifestyle. She was ultimately fired for not reporting one of her subordinate's sexual advances towards another subordinate. That is all there is to this case, and it is not enough to raise a jury question on race-based discrimination, hostile work environment and retaliation under Title VII.[1] Accordingly, the Court grants defendant's motion for summary judgment on those claims. Having dismissed all claims upon which the Court had original jurisdiction, the Court also declines to exercise supplemental jurisdiction over the remaining NYSHRL and negligent hiring claims – those claims are dismissed without prejudice to refile in state court.[2]

## BACKGROUND

Defendant, referred to collectively as Sodexo, is a contractor that provides food services and management of those services to third party providers. One of its clients is the Delta Airlines Sky Lounge at JFK Airport. In other words, when Delta passengers visit the Sky Lounge at JFK, some or all of the employees they meet will be Sodexo employees.

The General Manager of the Sky Lounge, Sidharth Goel, a Sodexo employee, hired plaintiff, who is black, in July 2022 as a prep cook. Within a couple of months of her start of employment, Goel suggested she apply for an open "Operations Manager" position at the Lounge. Plaintiff got the job in October 2022. It was a salaried position, and plaintiff received the highest salary of all the lounge operation managers at that time, in part because she had prior management experience at Starbucks. Plaintiff's roles and responsibilities included managing

---

[1] Plaintiff also brought her retaliation claim under 42 U.S.C. § 1981. Although neither party mentions § 1981 in their motion papers, the Court treats the § 1981 claim as a claim under Title VII, because the standards for both are the same. See Fincher v. Depository Tr. & Clearing Corp., 604 F.3d 712, 720-21 (2d Cir. 2010).

[2] Plaintiff initially brought claims under the NYCHRL as well but withdrew them in her opposition to this motion.

the front of house, directing operations of food services, overseeing food preparation, ensuring the cleanliness of facilities, and managing frontline staff. Operations Managers also received online manager training, physically opened the Lounge, and were expected to work through the completion of their responsibilities.

There were two other Operations Managers, one Hispanic and one Filipino, who, like plaintiff, reported to Goel. The Operations Managers were assigned different shifts that started before the Club's opening hours and extended after its closure. In turn, there were seven so-called "Supervisors" (one Bangladeshi, three Guyanese, one other South Asian, and one Hispanic) who reported to plaintiff or other Operations Managers (depending on the shift schedules), and below them was the "frontline staff." Two of the supervisors, Shelly Bishun and Natasha Mohanlall, resented plaintiff because they thought their longer tenure entitled them to the Operations Manager position before plaintiff.

During plaintiff's first year as Operations Manager, multiple staff members complained to Goel about her, accusing her of arriving late to work, not spending enough time on the Club floor, not answering phone calls, and telling staff members that she needed to complete her own work before she could assist them. Although plaintiff disagreed with these criticisms, Goel's own observations substantiated these complaints. Sodexo employees received annual performance evaluations, which contained one of the following ratings regarding how often an employee performed their job according to several categories: (i) none of the time; (ii) some of the time; (iii) most of the time; and (iv) always. In her performance review for 2022-2023, Goel rated her as making a "moderate contribution" and ranked plaintiff's performance in eight out of ten listed categories as "some of the time."

3

In September 2023, Goel put plaintiff on a performance improvement plan ("PIP").  The plan stated that the grounds for doing so were: (i) failure to complete an investigation project as assigned on August 4, 2023; and (ii) her ability to manage frontline staff.  Goel outlined the following action items: (i) treat all employees, clients, customers, and vendors with respect; (ii) meet all deadlines; (iii) complete safety walks; (iv) improve communication with staff; (v) improve ability to take initiative; and (vi) arrive on time to work.  Plaintiff disagreed with these evaluations of her work and refused to sign the PIP.  Nevertheless, plaintiff successfully completed the PIP and for the 2023-2024 years, she received an overall rating of 2.25/4.0.

Plaintiff had trouble getting along with one of her subordinates, a supervisor named Sharif Palash.  Palash was verbally abusive to plaintiff and "got in her face" while doing so, which caused plaintiff to fear for her personal safety.  Palash took it upon himself to unilaterally change assignments of front-line staff that plaintiff had made.  Based on plaintiff's complaints, Goel first gave Palash a verbal warning and then a written warning that further misconduct could lead to his termination.  Palash's behavior was not specific to plaintiff – he had interpersonal issues with other Sodexo employees who were not black as well.

In early 2023, plaintiff told Goel and a "People Center" (Sodexo's human resources department) representative that employees had called her "Young Girl," "Black Girl," and "Haitian Girl," but neither Goel nor the HR representative acted on this complaint.  Additionally, in December 2023, plaintiff raised concerns to the People Center that employees of Sodexo had referred to her using the nicknames "Sister," "Blackie," and "Black Cake."  Another HR representative, Katherine Shea, investigated the complaint.  Shea found that one employee had called plaintiff "Sister" multiple times but attributed the nickname in the context of other team members referring to Goel as "papa," a term plaintiff herself used to describe Goel.  She also

4

confirmed that supervisors Mohanlall and Bishun had used the term "Black Cake," but could not confirm whether the term had been used to refer to plaintiff.  No other supervisors used the term "Black Cake."

Following the investigation, Sodexo counseled the Lounge's staff against the use of nicknames, and Goel issued Mohanlall a memorandum advising her that Sodexo will not tolerate "offensive, unwelcome, physical, verbal behavior or sexual conduct."  After that, the use of nicknames in the lounge ceased.

Plaintiff's schedule initially started between 4:00 a.m. and 6:00 a.m. and ended between 2:30 p.m. and 4:00 p.m.  In July 2023, the Lounge's Hospitality Manager provided written feedback to Goel that, among other items, she had not seen much presence from plaintiff on the floor interacting with guests or leading the team by example.  Because of these performance issues, that same month, Goel switched plaintiff's morning shift with the afternoon shift of another Operations Manager, Adrian Olila, a manager with good standing and more experience than plaintiff.  As a result of this shift change, plaintiff could no longer pick up her children and attend her religious service on Sundays.  However, in June 2024, Olila left Sodexo's employment, and plaintiff returned to primarily working the Lounge's early morning shift.

In December 2023, plaintiff requested vacation leave between December 20, 2023, and January 3, 2024.  Although Goel initially approved vacation leave between December 24 – 28, based on having to accommodate all employee's vacation requests, Goel ultimately granted plaintiff vacation leave between December 27 – 31, 2023 after plaintiff protested that three days was not enough.

Plaintiff brought this action in November 2024, alleging six causes of action: (1) discrimination in violation of the NYSHRL, (2) violations of the NYCHRL, (3) discrimination in

violation of Title VII, (4) hostile work environment in violation of Title VII, (5) retaliation in violation of Title VII and § 1981, and (6) negligent hiring, retention, supervision and failure to discipline under state law.

In June 2025, Shea interviewed plaintiff regarding a third-party complaint of sexual harassment. During the interview, plaintiff admitted to Shea that around a month earlier, she had observed inappropriate physical contact by a male employee towards female employees, and that she had not reported the conduct or addressed the behavior, but had instead walked away. Plaintiff emailed Shea asking for advice on how to handle such situations in the future, and whether she should report such conduct or ignore it. Sodexo placed plaintiff on a five-day investigatory suspension on the grounds that she had not addressed nor reported violations of company policies. It sent plaintiff a letter on June 20, 2025, notifying her that it had terminated her for her failure to meet critical managerial expectations, in particular, her failure to report inappropriate physical conduct and refusal to provide sufficient details to Employee Relations to assist it in conducting a full investigation.

Plaintiff subsequently amended her complaint to include her termination as an adverse employment action in her retaliation claim. Defendants move for summary judgment on all claims.

## DISCUSSION

### I.    Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view all facts in the light most favorable to the nonmoving party. See Anderson v. Liberty

6

Lobby, Inc., 477 U.S. 242, 248 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970)).  There is no genuine issue of material fact "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 212 (2d Cir. 2001) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

A party may not defeat a motion for summary judgment solely through "unsupported assertions" or conjecture.  Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).  Rather, "'[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'"  Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita, 475 U.S. at 586-87); see also Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994).  Indeed, the non-moving party must offer "concrete evidence from which a reasonable juror could return a verdict in [her] favor."  Anderson, 477 U.S. at 256.

## II.    Discrimination

Plaintiff's race discrimination claim under Title VII is analyzed under the three-step burden shifting framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Montgomery v. New York City Transit Auth., No. 17-cv-6522, 2019 WL 1258482, at *3 (S.D.N.Y. March 19, 2019), aff'd, 806 F. App'x 27 (2d Cir. 2020).

The plaintiff must first establish a prima facie case of discrimination.  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).  If the plaintiff satisfies her prima facie case, there is an inference of discrimination which shifts the burden to the defendant to proffer a

legitimate, nondiscriminatory business rationale to justify its adverse employment action. Id. at 253 (citing McDonnell Douglas, 411 U.S. at 802-03). If the defendant satisfies its burden, the burden shifts back to the plaintiff to raise a factual issue that the defendant's offered reasons were a pretext for discrimination, or that her prima facie case, even when considered against the defendant's evidence, is sufficiently compelling that a jury could reasonably find that she was discriminated against because of her class membership. See Bonaffini v. City Univ. of New York, 751 F. Supp. 3d 67, 74 (E.D.N.Y. 2024).

In determining whether the plaintiff has met this burden, the court must take a "case-by-case" approach that weighs "'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports or undermines the employer's case.'" James v. N.Y. Racing Ass'n, 233 F.3d 149, 156 (2d Cir. 2000) (cleaned up) (quoting Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 148-49 (2000)). "In short, the ultimate burden rests with the plaintiff to offer evidence 'sufficient to support a reasonable inference that prohibited . . . discrimination occurred.'" Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005) (quoting James, 233 F.3d at 156).

The following well-established four-factor test is used to determine whether there is a prima facie case of discrimination: (1) plaintiff must belong to a protected class; (2) plaintiff must have been qualified for the job; (3) plaintiff must have suffered an adverse employment action; and (4) the circumstances surrounding the adverse employment action must give rise to an inference of discrimination. See, e.g., Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). In considering whether the plaintiff has made her prima facie showing, a court should consider only the plaintiff's proffered evidence, not the defendant's evidence in response to it.

See id.  Plaintiff's burden at this stage is *de minimis*.  See Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000).

Sodexo does not contest that plaintiff belongs to a protected class or that she was qualified for her job.  It argues, however, that plaintiff has not suffered an adverse employment action, and that even if she had, the circumstances surrounding the adverse employment action do not give rise to an inference of discrimination.

In response, plaintiff argues that Goel changing her schedule from morning to afternoon resulted in her being unable to get home in time to cook, spend time with her children, or attend church on Sunday.  Along with partially denying her vacation leave and giving her a negative job evaluation, she argues that these are all adverse employment actions.  Pursuant to the Supreme Court's decision in Muldrow v. City of St. Louis, 601 U.S. 346 (2024), plaintiff is likely correct that requiring an employee to perform "nighttime work" despite the employee's preference for daytime work, at least, *can* constitute an adverse employment action.[3]

Nevertheless, the Court need not conduct an in-depth analysis into whether all these employment actions were adverse or not because plaintiff has not raised an inference of discriminatory intent under the fourth factor.

"A plaintiff may prove discrimination either by direct evidence of intent to discriminate or 'indirectly showing circumstances giving rise to an inference of discrimination.'"  Banks v. Gen. Motors, LLC, 81 F.4th 242, 270 (2d Cir. 2023) (quoting Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015)).  Plaintiff does not argue that Goel directly

---

[3] In Muldrow, the Supreme Court rejected a Tenth Circuit decision finding that the denial of an employee's request to transfer to a day shift was not an adverse employment action because it did not result in a "*significant* change in employment status or responsibilities."  Daniels v. United Parcel Serv., Inc., 701 F.3d 620, 635 (10th Cir. 2012), abrogated by Muldrow, 601 U.S. 346.  In abrogating that case, the Supreme Court indicated that it had "lower[ed] the bar Title VII plaintiffs must meet," and rejected any legal standard that required "material" injury.  Muldrow, 601 U.S. at 356 n.2; see also Bonaffini v. City Univ. of New York, 751 F. Supp. 3d 67, 75-76 (E.D.N.Y. 2024) (explaining Muldrow's likely effect on cases within the Second Circuit).

discriminated against her.  Instead, she argues that Goel treated East Indian and Guyanese employees more favorably than her due to her race, thus raising an indirect inference of discrimination.

"A showing of disparate treatment – that is, a showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group' – is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case." Mandell v. Cnty. of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) (quoting Graham, 230 F.3d at 39). "A plaintiff relying on disparate treatment evidence must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." Id. (internal quotation marks and citation omitted).  "Ordinarily, the question whether two employees are similarly situated is a question of fact for the jury." Id.

Here, however, plaintiff has not shown that she was similarly situated to her comparators such that a jury could reasonably find in her favor.  Instead, plaintiff acknowledges that those employees were employed in different roles because they all answered to her, as she was an "Operations Manager," and they were a level lower, *i.e.*, "Supervisors."  As the title suggests, the responsibilities of an Operations Manager included managerial duties such as managing front of house, directing operations of food services, overseeing food preparation, ensuring the cleanliness of facilities, and managing frontline staff.  Operations Managers also received online manager training, physically opened the Lounge, and were expected to work through the completion of their responsibilities as salaried employees.  Although plaintiff argues that her responsibilities "varied depending on Goel," and that she "did not have specific responsibilities," she does not dispute that as an Operations Manager, she performed those duties.  More

10

importantly, she never argues that supervisors performed any of the same duties as her or were otherwise similarly situated to her in any material respect.[4]

Moreover, even assuming plaintiff could raise an inference of discrimination thus establishing a prima facie case, her claim fails under the second and third steps of McDonnell Douglas because she provides no evidence that defendant's proffered legitimate reasons for its actions are pretextual. Sodexo submits that Goel based his decision to change her shift from morning to afternoon based on the Lounge's customer satisfaction scores, her attendance issues, her absence of floor presence, lack of managerial support, and overall staffing levels. Goel changed the date of plaintiff's approved vacation leave on one occasion due to the need to balance the interests of the Lounge's staffing during the height of the travel season with competing vacation schedules. Lastly, Goel issued plaintiff a PIP because of her failure to complete an assigned project and her inability to manage frontline staff.

Plaintiff does not raise a genuine dispute in response to these reasons. Instead, plaintiff merely concludes that Sodexo's reasons for the actions it took against her were pretextual. For example, although plaintiff argues that Goel "had to request" written feedback showing that plaintiff's presence in the Lounge was insufficient, she does not dispute the merits of the feedback with evidence of her presence in the Lounge. That is insufficient to raise a genuine issue of material fact to defeat Sodexo's motion for summary judgment. See Bonaffini, 751 F. Supp. 3d at 74.

---

[4] Although Olila could conceivably be similarly situated to plaintiff, plaintiff does not argue this in her opposition, nor does she argue that Goel gave him preferential treatment due to his race. Plaintiff also acknowledges that Olila had been employed as an Operations Manager longer than her.

11

**III.     Hostile Work Environment**

Title VII defines a hostile work environment as one "permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted).  The plaintiff must show that "the complained of conduct: (1) is objectively severe or pervasive – that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's protected characteristics or protected activity." Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks and citation omitted). "Factors that a court might consider in assessing the totality of the circumstances include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) 'whether it unreasonably interferes with an employee's work performance.'" Id. (quoting Harris, 510 U.S. at 23).

Plaintiff's hostile work environment claim is based on a series of nicknames: "Blacky," and "Black Cake," that Bishun and Mohanlall used to describe her; "Sister," that another supervisor, Khargu, used to describe her; and the behavior of Palash, who yelled and cursed at her and infringed on her personal space, causing her to fear for her safety.  Plaintiff also argues that Bishun and Mohanlall called her "Young Girl," "Black Girl," and "Haitian Girl."  She asserts that Sodexo's failure to prevent such conduct, even after she complained to her superiors and HR about it, renders it liable.

12

Although the use of "Blacky" and "Black Cake" here may have some relation to plaintiff's race, it does not rise to the level of "severe or pervasive" necessary to sustain a claim for hostile work environment.[5]  Plaintiff does not provide any evidence to counter her own testimony that these two nicknames were used only twice, by two employees, and she admits that no other Sodexo employees used the phrase "Black Cake."  Nor does plaintiff show how these two specific nicknames unreasonably interfered with her work performance – plaintiff acknowledges that she was not initially aware that they were even directed at her.  Moreover, plaintiff points to an alternative reason why the two employees who used the nicknames may have done so – they were unhappy that plaintiff had been promoted before them, because they felt that the job should have been based on seniority.  Accordingly, even though the use of "Blacky" and "Black Cake" here may well have been offensive, it cannot form the basis for plaintiff's hostile work environment claim.

Likewise, the use of "Sister" does not rise to the level of "severe or pervasive" either. Unlike the other two nicknames, plaintiff does not argue in her affidavit that "Sister" was one of the slurs used against her.  Plaintiff complained about its use in her email to HR in December 2023.  The subsequent investigation attributed "Sister" to plaintiff in the context of other team members referring to Goel as "Papa," a "term of endearment" which plaintiff herself used to describe Goel.  Given these undisputed facts, and more importantly, the lack of a connection between the use of "Sister" to her race, plaintiff has not shown that its use was objectively, or even subjectively, severe or pervasive enough such that it created an environment that a reasonable person would find hostile or abusive.

---

[5] Curiously, plaintiff appears to acknowledge this.  Her opposition brief devotes multiple pages to emphasizing that a hostile work environment claim requires more than a few "sporadic racial slurs" to succeed.  See, e.g., Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997); Snell v. Suffolk Cnty., 782 F.2d 1094, 1103 (2d Cir. 1986); Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997).

Although plaintiff also argues that Bishun and Mohanlall called her "Young Girl," "Black Girl," and "Haitian Girl," plaintiff has not raised a genuine dispute of material fact, because her only knowledge of their use is based on what a Sodexo "client" told her. See Porter v. Quarantillo, 722 F.3d 94, 97 (2d Cir. 2013) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment . . . ."). Even if plaintiff could point to admissible evidence substantiating her claim that these two employees had used these nicknames, it is unclear how "Young Girl" has anything at all to do with plaintiff's race. With respect to "Black Girl," and "Haitian Girl," "[s]tatements that merely acknowledge an individual's membership in a protected class do not support an inference of discriminatory animus." See Wong v. Blind Brook-Rye Union Free Sch. Dist., No. 20-cv-2718, 2022 WL 17586324, at *16 (S.D.N.Y. Dec. 12, 2022) (quoting Buckner v. County of Sullivan, No. 12-cv-3770, 2015 WL 437408, at *4 (S.D.N.Y. Feb. 3, 2015)); Burke v. Deer-Park Union Free Sch. Dist., No. 8-cv-3600, 2011 WL 477736, at *4 (E.D.N.Y. Feb. 3, 2011).

Lastly, although it is undisputed that plaintiff had a "difficult" relationship with her subordinate Palash, and that on at least one occasion, Palash yelled and cursed at her, plaintiff does not even attempt to attribute any of Palash's behavior to her race. For example, plaintiff concedes that Palash never used a racial term against her and that he had interpersonal issues with other Sodexo employees who were not black. It is unclear on what grounds Palash's actions, however reprehensible, could be attributed to her race.

In addition to the foregoing reasons, plaintiff's hostile work environment claim fails because Sodexo is not liable for the conduct of Bishun, Mohanlall, Khargu, or Palash. "Under Title VII, an employer is liable for the harassing conduct of a non-supervisory employee only if it either 'failed to provide a reasonable avenue for complaint' or if 'it knew, or in the exercise of

14

reasonable care should have known, about the harassment yet failed to take appropriate remedial action.'" Legg v. Ulster Cnty., 979 F.3d 101, 115 (2d Cir. 2020) (quoting Duch v. Jakubek, 588 F.3d 757, 762 (2d Cir. 2009)).

Here, it is undisputed that Sodexo had an "avenue for complaint," because it had an internal policy which encouraged employees who believed that they had been discriminated against to submit a complaint in any of the following ways: according to the procedures described in the "Promise of Respect and Fair Treatment policy," or by notifying their manager, their manager's manager, or a HR representative at the "People Center." Plaintiff herself used this procedure when she reported Sodexo employees for inappropriate behavior on multiple occasions, and it was reasonable, because on each occasion, Sodexo terminated the employee.

Plaintiff acknowledges that when she submitted a complaint to the People Center in December 2023 regarding the use of "Sister," "Blackie," and "black cake," a HR representative conducted an investigation that same month, and when the investigation concluded in February 2024, the use of nicknames ceased.[6] Sodexo asserts that it counseled the Lounge's staff against using any nicknames for one another, and that Goel issued Mohanlall a memorandum regarding prohibited harassment advising her that Sodexo would not tolerate offensive behavior. Plaintiff's only response is that she could not dispute or confirm whether Sodexo had taken these actions. As Sodexo has established that there exists no genuine dispute of material fact, the record shows that Sodexo did not fail to take appropriate remedial action once it found out about its employees' behavior, and accordingly, it is not liable for their behavior.

---

[6] Although plaintiff first raised the issue of nicknames with Goel and Beltran in early 2023, and they "ignored" her complaint, the record shows that the only nicknames she raised then were "Young Girl," "Black Girl," and "Haitian Girl." As explained above, however, statements that merely acknowledge an individual's membership in a protected class do not support an inference of discriminatory animus.

## IV.    Retaliation

"Retaliation claims under Title VII are evaluated under [a similar] three-step burden-shifting analysis" to discrimination claims.  See Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010) (quoting Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005)).

"First, the plaintiff must establish a *prima facie* case of retaliation by showing: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  Id. (internal quotation marks and citation omitted).  The plaintiff's burden at this stage is *de minimis*.  Id.  If the plaintiff meets her initial burden, a presumption of retaliation arises and the defendant must, at the second step, "articulate a legitimate, non-retaliatory reason for the adverse employment action."  Id. (internal quotation marks and citation omitted).  "If so, the presumption of retaliation dissipates," and the plaintiff must, at the third step, "show that retaliation was a substantial reason for the adverse employment action."  Id. (internal quotation marks and citation omitted).  "A plaintiff can sustain this burden by proving that a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause; if the employer was motivated by retaliatory animus, Title VII is violated even if there were objectively valid grounds for the adverse employment action."  Id. at 164-65 (cleaned up).

Plaintiff argues that when she filed her complaint about the nicknames in 2023 and when she filed this action, Sodexo retaliated by terminating her in violation of Title VII.  Sodexo does not dispute that these two actions are protected activities or that her termination is an adverse

16

employment action – it argues only that plaintiff cannot establish any causal connection between the protected activities and her termination.

"[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000) (citing Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993)).

Plaintiff has not produced any direct evidence that Sodexo retaliated against her because of her protected activities. Accordingly, the Court considers only whether there is any indirect evidence. Plaintiff filed her complaint to HR about the nicknames in December 2023, and this action in November 2024. Sodexo terminated plaintiff in June 2025 – a period of around a year and a half from her complaint to HR, and seven months from her commencement of this action. Although the Second Circuit has "not drawn a bright line defining . . . the outer limits beyond which a temporal relationship is too attenuated to establish causation," Banks v. Gen. Motors, LLC, 81 F.4th 242, 277 (2d Cir. 2023) (quotation omitted), a duration of seven months is too long to establish such causation, as plaintiff cannot point to any other evidence of retaliatory animus. See Dixon v. Int'l Fed'n of Accts., 416 F. App'x 107, 110 (2d Cir. 2011) (finding four months between protected activity and termination insufficient alone to establish a causal connection); Hollander v. Am. Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir. 1990) (finding four months between protected activity and refusal to hire insufficient); see also Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity . . .

17

as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'").

Moreover, even assuming plaintiff could point to a causal connection between her protected activities and her termination thus establishing a prima facie case, her claim fails under the second and third steps of McDonnell Douglas because she has provided no evidence that Sodexo's proffered legitimate reasons for her termination are pretextual.  Sodexo submits that it terminated plaintiff's employment because she failed to report inappropriate physical conduct she personally witnessed between subordinates, and that Sodexo is authorized to terminate an employee's employment for a failure to abide by its policies.  Plaintiff does not dispute this, or the fact that in a related email to HR, she asked whether she should report such behavior or "ignore" it.  No reasonable Operations Manager would have any question about whether she should report inappropriate sexual contact between subordinates on the job.  Thus, as Sodexo has established that there exists no genuine dispute of material fact, plaintiff's Title VII retaliation claim must also fail.

## V.    State Law Claims

Having dismissed all of plaintiff's federal claims over which the Court has original jurisdiction, the question becomes whether to retain jurisdiction over plaintiff's NYSHRL and "negligent hiring, retention, supervision and failure to discipline" claims.  28 U.S.C. § 1367(c) provides that a district court "may decline to exercise supplemental jurisdiction over a claim," if "the district court has dismissed all claims over which it has original jurisdiction."  "In determining whether to exercise supplemental jurisdiction, the relevant factors to be considered are judicial economy, convenience, fairness and comity."  Thomas v. City of New York, 953 F. Supp. 2d 444, 462 (E.D.N.Y. 2013) (citing DiLaura v. Power Authority, 982 F.2d 73 (2d Cir.

18

1992)).  Dismissal "simply by virtue of the fact that the federal-law claims have been eliminated prior to trial" is insufficient – "district courts must still conduct the inquiry and carefully evaluate the relevant factors."  See Catzin v. Thank You & Good Luck Corp., 899 F.3d 77, 83 (2d Cir. 2018).  "These factors, however, will usually 'point toward declining to exercise jurisdiction over the remaining state-law claims' when all the federal law claims are eliminated before trial."  Thomas, 953 F. Supp. 2d at 462 (quotation omitted).

The first and fourth factors, judicial economy and comity, weigh in favor of declining to exercise supplemental jurisdiction.  Considering that pursuant to the 2019 amendments, a NYSHRL claim must now be considered under an "as of yet unclear" (but lower than Title VII) standard, see, e.g., Nezaj v. PS450 Bar & Rest., 719 F. Supp. 3d 318, 335 n.3 (S.D.N.Y. 2024), "comity counsels against exercising jurisdiction over" a claim with "a lower threshold of proof than its federal counterparts[,] [that] has been applied primarily at the intermediate appellate level of the state courts, with limited opportunity for the New York Court of Appeals to construe it," see Lambert v. Trump Int'l Hotel & Tower, 304 F. Supp. 3d 405, 428-29 (S.D.N.Y. 2018) (quoting Harris v. NYU Langone Med. Ctr., No. 12-cv-0454, 2014 WL 941821, at *2 (S.D.N.Y. March 11, 2014), aff'd, 615 F. App'x 49 (2d Cir. 2015)).  Likewise, the standard for plaintiff's negligent hiring claim does not overlap with plaintiff's federal claims, and is more suited for consideration by a state court.

The other two factors, convenience and fairness, also weigh in favor of declining to exercise jurisdiction.  Given the "novelty" of the new standard for a NYSHRL claim, resolution of that claim "should be entrusted to a court that is an expositor of New York law."  See Suffolk Cnty. Police Benevolent Ass'n v. Trotta, No. 22-cv-05803, 2024 WL 3443490, at *6 (E.D.N.Y. July 17, 2024).  Moreover, "when federal claims are dismissed early in the litigation – for

19

example, before trial on a summary judgment motion – dismissal of state law claims is appropriate." Lambert, 304 F. Supp. 3d at 428 (quotation omitted).

Accordingly, the Court dismisses plaintiff's NYSHRL and negligent hiring claims without prejudice to refile in state court.

## CONCLUSION

For the foregoing reasons, the Court grants Sodexo's motion for summary judgment on plaintiff's Title VII discrimination, hostile work environment and retaliation claims. The Court also dismisses plaintiff's NYSHRL and negligent hiring, retention, supervision and failure to discipline claims without prejudice to refiling in state court.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
      May 4, 2026